Good afternoon. If it pleases the court, I'm Paul George on behalf of Edward Major. With this court's permission, I'd like to turn my attention first to the argument based on the admission of other crimes evidence under Rule 404B. And I'd like to start by acknowledging, as the government's brief has pointed out, that Rule 404B is a rule of inclusion and that there are numerous circumstances detailed in the cases of this court where those kinds of acts are permissible under the rule. But I submit to this court that this case really presents the question of, are there any limits posed by Rules 403 and 404 to the introduction of that kind of evidence? The defendant conceded that the amount of drugs was consistent with distribution. Yes, that's correct. But the government says you did not concede that. I believe that the record will support the contention that that was conceded. Where can we find that in the record? Let's say initially it's conceded by the fact that no questions at all were posed by defense counsel to the government's expert who testified that the packaging was consistent with an intent to distribute drugs. That individual testified very briefly and no questions were posed to him at all by defense counsel. It's also conceded in closing argument where counsel argued strictly that there was insufficient evidence to establish that the drugs found in the alley belonged to Mr. Major. At no point in time did he suggest in any respect that the owner of those drugs, whoever he may be, had them for personal use or for any... Well, that doesn't sound like a concession that the amount of drugs was consistent with distribution. Well, I believe the record will support that he explicitly made that concession in his closing argument. Well, isn't that too late? I mean, the government has to know what they've got to prove when they put on their case in chief. I believe that the opening argument is the same, that the defense was always you can't conclude that these drugs belong to Mr. Major based on the government's evidence with respect to the date of his arrest. There was never an attempt to say that, look, there were 50 individual packets of cocaine, of crack cocaine in this sandwich bag that was found in the street. It wasn't something that was, you know, a real head scratcher as to whether or not these drugs were possessed by somebody with the intent to distribute them. Nor did Mr. Major ever at any point in time say, you know, I'm a drug addict. I use drugs at such a rapid rate that all of this was intended for me. Or that the evidence precluded that possibility. The defense was always an extremely simple one. There were, as you argue later in your argument, I mean, there were five or six different convictions here. But the only conviction, staying with that for a second, the only conviction that was offered was the conviction, and it was done by stipulation, at least as to how it would go in, was the conviction for possession with intent to deliver. Yes, that's correct. Doesn't that have some relevancy to this overall charge of possession with intent to deliver? I mean, you can't look at the two elements separately, possession and intent to deliver. Your Honor, if it please the Court, if that's all we were talking about here, this would be an extremely different case. But in fact, what we're dealing here really was an avalanche of evidence, primarily not as a result of that stipulation to a prior conviction, but by virtue of the testimony of this individual's girlfriend who was brought in there to describe a year's worth of daily drug dealing. And that's why I've argued in our brief that that evidence thoroughly swamped any evidence that this individual possessed the drugs in question on that particular day. I mean, this went on for page after page after page. And I would really ask this Court not to reach a final decision on this until rereading the direct testimony of Ms. Cook that appears in the reproduced record at pages 114 through 130. And it is just a litany of prior bad acts. Now, even that wouldn't be dispositive. But when you compare it to the evidence of this man's possession of these drugs on this particular day, which comprised maybe four or five pages of this entire trial, I mean, there's a lengthy description of how this guy had an open bench warrant and he wouldn't cooperate with the police and so forth. And there was a reprehensible struggle, which I think he should have been charged for in state court with the police for his refusal to cooperate with them. But when you come down to the question of whether those drugs were his, the evidence amounts to two or three answers to four or five questions. It says, I saw a little bit of a throwing motion. I didn't see anything come out of his hand. And I never saw him go into his pocket and recall that he had. That's something, of course, any police officer would be looking at closely if he's involved in a struggle with somebody. What is this individual doing with his hands? Nothing could be more important than that. Is he reaching inside his clothing? Nothing could be more important than that. But neither officer says anything other than I saw a little bit of a throwing motion. This after the man had already been required to put his hands on top of his head and so forth. So we know he didn't have drugs in his hands before the struggle began. Now, under those circumstances, if that's the extent of the evidence, it's not implausible that there are drugs in an inner city alleyway that come from some other source than this person. He certainly could be have thrown it. And maybe those drugs, the origin is a different one. But once you bring in this girlfriend to testify about a year's worth of, she said he makes his drug deals by the telephone and his phone rang all day. I saw golf ball size pieces of crack cocaine routinely in the apartment and he had brought them there. I saw him dividing up the proceeds of his drug trade with his associates. I know what corner he makes his sales on. It's this, that and the other. And this went on and on. Now, at that point in time, what is this jury being asked to decide? Not whether or not those drugs on the street are his. That's almost an irrelevant question at that point. What's actually been posed to this jury is, is this man a drug dealer generally? And the answer is pretty clearly yes. Now, that's why I suggest to this court that if the restrictions embodied in rules 403 and 404 about the introduction of this kind of evidence mean anything at all. This trial should have gotten out of hand like that. Intent is twofold. There's the intent to distribute. And then on the other hand, there's the intent to just generally possess it all. And that's what was really placed in issue here. And I frankly can't articulate a distinction between those two concepts, propensity and intent to possess under the facts of this case. Now, I'm not saying that there can be no distinction between those two concepts. I'm just suggesting as presented here, when there's such a swamping of the evidence of the days of the actual allegation by the overall testimony that this person is a drug dealer, that at that point in time, you can't look at a common sense jury and say to them, don't use this to determine that he's acting in conformity with his prior behavior. That's not allowed. Just use it to determine if he intended to possess the drugs that were found in the alley after the fight. This court, of course, will determine whether there is a meaningful distinction between those two concepts. I respectfully submit that there is not. Mr. George, let me ask you a question. Did the court in doing the 403 balancing as to whether or not the probative value outweighed the prejudice? Did the court on the record perform that balancing test? I would say that the court did attempt to provide that balancing test. I don't know if the court was really quite prepared for everything it got in the course of Ms. Cook's testimony. But yes, the government properly filed its pretrial motion. The introduction of the evidence was objected to by trial counsel, and the balancing test was performed. I'm not quite sure that the record will support the proposition that the court truly expected everything it got in the way of what I suggest was propensity evidence. Whether it's fully on the record or not, we can conduct our own analysis, can't we not? Certainly. And I urge this court to do so, and I think that the fair result of that evaluation will be that the other crimes' evidence here Look at the cases that the government has cited, the cases where this kind of evidence was properly submitted. You have situations such as this. I'm pulled over for speeding. There's a bag in the back seat of my car, and I'm trying to say I don't know what's in it. Then you bring in my one prior conviction, and the jury, I think with a proper instruction from the court, can use that evidence properly. The same thing with the person who's driving the boat, and there's marijuana in the hold of the boat. And he says I don't know what the cargo is, but then there's evidence that he's done it before. There's the cases where someone has put a luggage on an airplane, goes to pick it up, the luggage has his name on it. He says, oh, that's not really my bag. I just checked it for a friend, and it turns out that he's got a prior case. In all of those situations, there's a logical connection between showing what he did before and the specifics of the individual case in issue. In all of those cases, there might be one prior conviction, one prior drug deal. Nobody gets up on the witness stand to describe a full year of daily drug dealing and then ask the jury to properly employ that evidence and not treat it as propensity. Is your objection to the quantum of testimony, the year's worth of testimony against your client here, or is it that you didn't have that same kind of nexus, somebody's boat, somebody's car, and the fact is this was found on the street in a public alleyway? I think it's both, sir. It's both. We'll give you five more minutes. Well, could I save three of them? Because I forgot to ask for rebuttal time. We'll give you three of them. I think they saved three for me. Oh, they did already. We'll still give you five minutes. I appreciate the court's courtesy. I respectfully submit that both of those factors are in issue here. It's certainly the quantum of the evidence. But it's also, as Judge Roth asked at the outset, is there a question about intent here with respect to how these drugs, someone intended to use them, whether they intended to use them all themselves or whether they intended to distribute them? Clearly there was none here. And would this court like to hear anything with respect to the sentencing issue here? Yes. I want to start out by acknowledging that the trial counsel, who was utterly silent during this proceeding and who does not appear to have submitted a sentencing memorandum on his client's behalf, has not raised the issue that I presented here. I would ask this court, nonetheless, in view of the recent changes in the sentencing law, to consider it at least as to whether or not it would be appropriate to remand this matter for resentencing. If this person were to receive the two-level reduction that the new sentencing guidelines could possibly be entitling him to, there would be a significant reduction in the guidelines and the court might sentence differently, particularly because the mandatory minimum sentence which this individual is compelled to receive by statute anyway is itself based upon that same 100 to 1 crack versus powder discrepancy which is now coming under such criticism. So that rather than make this individual go through the process of filing a 3582 petition or raising a 2255 motion because of his counsel's essential abandonment of him at the sentencing proceeding, if this court does not determine to grant a new trial on the result of the 404B issue, I would respectfully ask this court to remand the matter for resentencing. And with that, I... Good. We'll have you back on rebuttal. Thank you, sir. Thank you very much, Mr. Miller. Good afternoon. Good afternoon. My name is Mark Miller. I'm representing the United States in this matter. Your Honors, Mr. George has stated that I believe his quote was, this one's not a head scratcher. Well, maybe for me, for him, for the three of you, it might not be as much of a head scratcher on the issue of whether there was powder discrepancy in possession with intent to distribute the drugs in this case. For your average jury, people who are not learned in the law, people who don't handle drug cases, who don't hear drug cases, who don't review drug cases, I submit to you that this very well, very possibly, and most likely would be a head scratcher. I also point out one of the initial questions to Mr. George was, was there a concession? Was it conceded in this case that this was possession with intent to distribute? I submit to you, I defy you very respectfully to find in the record where that was made, where a concession was made. I agree with Mr. George that at trial, Mr. Briskin did not go into an extensive cross-examination of the drug expert. Strategically, I would agree with him that was the right play. Would we have a different case if the defense had said right in the beginning, we concede that with the amount and the packaging here, it's legitimate to infer possession with intent to deliver? Mr. George's argument would sell a lot better if that had happened. Would the government be in a different position then? The government most likely would be in a different position, Your Honor. However, as I pointed out in the brief and I'll point out in argument today, without such a concession right at the outset of the case, I believe you hit the issue right dead square, which is the government never loses its burden of proof. Even if he implies by not cross-examining the drug expert during the course of the trial that that issue isn't being challenged as vigorously as it could be, there is nothing to prevent that jury from determining that I have not sustained my burden as the prosecutor. And I will point out the context in which my frame of reference was made in this case. Before I was a federal prosecutor, I was a state prosecutor. And I watched an assistant DA that served under me try a case against a very good defense attorney. That defense attorney repeatedly, pre-trial, all during the trial, said, don't worry, we're not challenging that it's intent to deliver. And that assistant took him at his word and didn't mount as spirited a prosecution as I believe should have been. And in closing argument, that defense attorney made him pay and did an excellent job standing up and saying, well, who did you hear say this was intent to deliver? Well, all you heard was a cop. Well, I don't remember any cops on our side of the case. The cops were only on their side of the case. Wouldn't you like somebody independent to say that? It's not my job to put up the independent witness. They have the burden of proof, not guilty on the felony charge. I remember things like that. Mr. Miller. Yes. Isn't the concept of intent to deliver different from a proof standpoint with intent, which is normally what prior conviction, past conduct, testimony, when permissible under 404B, is offered for? I don't know that I necessarily agree. It's certainly most of the cases that I have dealt with, the intent issue and 404B evidence, have been in a different context. However, I have had a number of cases, drug cases, where the intent, the intent to deliver the drug was principal issue in the case or close to principal issue. And the 404B evidence obviously was critical to a determination by the jury on that specific issue. Okay, but you offered this evidence collectively. Yes. Ms. Cook's testimony plus the stipulation on the prior conviction. It was offered for the purpose of showing intent. Yes. Okay. But I see a difference between what was offered and what you typically would be trying to show, and that would be the intent to, quote, possess, which was the issue in this case because the testimony was we saw a motion. We saw what happened. We saw a motion. We didn't see what was thrown. We go back in the alley, we find this baggie with crack cocaine. Which is very important because, again, with the police testifying as they did, they saw a throwing motion but did not see an object in his hand and did not see an object fly through the air. Once again, it's more incumbent upon me to be able to establish intent to possess, that he actually possessed the drug. Then I get to the next hurdle, which is once I establish that, assuming I do with the jury, do I get traction on my argument that his intention is to deliver it? But where does that line, where do you get to the point where you cross that line between showing, between offering this evidence to show intent and then offering this evidence to show that this guy is a bad character who's been dealing drugs for at least the last year plus on at least one occasion when he got convicted of it? When do you cross that line between intent and bad character for which you're not allowed to offer this kind of evidence? I'm in agreement with that assertion. Where does the line draw? I don't know. I only submit to you it wasn't crossed in this case. I fully acknowledge that there are a number of things, number of pieces of evidence admitted in this case that go toward the issue of intent. And frankly, I'll admit a lot of cases I don't have such testimony. I don't have such evidence. But in this case, I believe Judge Stengel did do the proper analysis. More importantly, I've been in front of judges that I wish would go to half the extent that he did to provide limiting instructions to the jurors. And as this court acknowledges and held in the Cruz case and other cases, there's a presumption that the jurors will follow these instructions. Judge Stengel goes one step beyond that. He makes sure multiple instructions, very carefully wording them, so that the jury has the proper focus. And in speaking with jurors after cases, I have become a firm believer that they do follow instructions and that they do follow the law as provided to them by the court. With the quantum of evidence that was presented in a case like this, how do you get away from the propensity argument, though? I mean, why? That is, can any amount of instructions really cure the propensity problem in a case like this? I think the instructions can, Your Honor, if they're as detailed and methodical as those that were provided in this case. With respect to the evidence, there is a continued pattern, as Mr. George alluded to. I believe it's from November or December until the date of arrest that Tynia Cook testifies this defendant was engaging in drug sales. And that's the time frame. So you have several months where that activity is referenced. Is there a point where it gets to be too much? Absolutely. I just don't believe it is in this case for the reasons it is all directly relevant. It is relevant on the intent issue. It is controlled by the limiting instructions, repeated limiting instructions, and jury instructions that, again, reinforce it in the mind of the jury when they are getting ready to deliberate on the issue. I submit to you it does not cross the line based on the way the evidence came in, more importantly, the way the judge controlled its admission at trial. How do we know when it crosses the line? If it were two years of testimony, three years of testimony? No, Your Honor, I agree. It's tough to say how much time would be too much, how much conduct would be too much. In this particular case, I did try a trial to keep it confined to that set period, and I was mindful of the case law. Some of the cases that are cited lackey, for one, which deals with an individual where evidence was admitted to show that he had shared drugs with a friend two years prior to the incident at which he was charged and then he went to trial. There, clearly, it's too remote. It's not joined to the incident that is at issue. In our case, I beg to differ. We have a continuing pattern of conduct which goes toward demonstrating this defendant's intent. He has possessed drugs in the past, as we know from the prior conviction. He has demonstrated an ability to obtain distribution quantities of drugs. Based on the testimony, he knows the difference in packaging. He knows the street deal, as it were, with respect to drugs. He has that knowledge. That does go directly to his intent, and I submit it was admissible at this trial, and it should be. Anything else? Do you want to say anything about sentencing? Yes, Your Honor. I believe Mr. George referenced the he asked for a remand of this case. I believe the proper procedure, as a result of the Wise case, would not be to vacate the original sentencing judgment. It would be to have the defendant file his motion under Section 3582C2. So I would submit that would be the proper vehicle for that. With regard to the actual sentence, the Gunther case is still applicable just because a sentence falls within the guideline range. The crack guideline range does not make it unreasonable. With regard to Kimbrough, Kimbrough says that certainly you can look at all different factors and fashion of variance, but more importantly, Kimbrough says you don't have to. The court doesn't have to. In this case, Judge Stengel, again, he doesn't need my props, but I'll give him some while I'm here, went to great detail going through the sentencing factors in this case. I might point out the defendant never argued that the crack guideline was too high, improper, unreasonable. Judge Stengel, however, as far as my argument is concerned, went above and beyond the call of duty, went through a very detailed analysis of this defendant, laid it all out on the record, and fashioned what is in a reasonable sentence under the circumstances. Any questions? Good. Mr. Miller, thank you very much. Thank you. Mr. George. Thank you, sir. I refer this court respectfully to pages 52 and 53 of my reproduced record here. You'll blink your eyes if you're not careful, but this is the opening statement of counsel, which comprises somewhat less than two pages. But I'm going to read the first paragraph and see if this court will have to decide whether it represents the kind of concession as regards intent in this case. It says, Good afternoon, ladies and gentlemen. Ladies and gentlemen, you are going to hear a lot of information and evidence that really has nothing to do with this case. What we are talking about is whether or not on June 27th Mr. Major possessed crack cocaine at the time he was being arrested by the Lancaster County Police Department. So it was framed from the outset. The defense was, this isn't my stuff. For whatever it was worth, that was the defense. I would like to just, before I let everybody go for the afternoon, one word about the trial court's instructions, which I would say are just hornbook correct. Except that once you get a set of facts like this, there becomes a point where you can say the instruction absolutely correctly about how you can and cannot use prior crimes evidence, but there will be a point in time where the distinction ceases to have any common sense meaning, no matter how correctly you phrase the jury instruction. And I respectfully ask this court, after rereading Ms. Tynia Cook's testimony, to conclude that that point was reached here. And thank you very much for entertaining this argument. Good. Any other questions? Mr. George, thank you. We thank both counsel for excellent arguments this afternoon. I appreciate it very much, sir. Take the matter under advisement. Thank you.